Filed 5/25/22

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| In re M.E. et al., Persons Coming Under the Juvenile Court Law. | C094587 |
|---|---|
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>C.M.,<br><br>    Defendant and Appellant. | (Super. Ct. Nos. 53-005138, 53-005139, 53-005140, 53-005141) |

APPEAL from a judgment of the Superior Court of Placer County, Colleen M. Nichols, Judge.  Conditionally affirmed and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Karin E. Schwab, County Counsel, and Jason M. Folker, Deputy County Counsel, for Plaintiff and Respondent.

1

C.M., mother of the four minors (mother), appeals from the juvenile court's orders terminating parental rights and freeing the minors for adoption. (Welf. & Inst. Code, §§ 366.26, 395.)**1** Her sole contention on appeal is that the Placer County Department of Health and Human Services (Department) and juvenile court failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We agree, and remand for the limited purpose of ensuring compliance with the ICWA.

### FACTUAL AND PROCEDURAL BACKGROUND

As the issue on appeal is limited to ICWA compliance, we dispense with a recitation of the underlying facts of the dependency case and set forth only the facts relevant to the ICWA inquiry and noticing requirements.

On January 5, 2021, the Department filed a petition on behalf of the minors, pursuant to section 300, subdivisions (b) and (g).

On January 6, 2021, the juvenile court held a detention hearing and asked both parents whether they had Indian ancestry. Although mother did not identify a tribe, she claimed Native American ancestry through her mother and provided the names of three relatives (two aunts and an uncle) who she claimed could likely provide more information. The father (father) reported Native American ancestry through his father and stated his great-grandfather was "full-blooded Cherokee." Father did not know his great-grandfather's name and stated he believed all the relatives who had that information were deceased. At the conclusion of the court's inquiry, the juvenile court stated: "At this point there is a reason to believe, but there is a legal standard. There is a reason to believe, so the Department is required to inquire, but there is absolutely no evidence that

---

**1**      Undesignated statutory references are to the Welfare and Institutions Code.

there is a reason to know." The court also stated: "The Department is required to continue to investigate or inquire as to the Indian Child Welfare Act."

On January 26, 2021, the Department filed an amended petition adding allegations pursuant to section 300, subdivisions (a), (e), (i) and (j).

On January 29, 2021, mother was interviewed by a Department investigator regarding her knowledge of having any American Indian ancestry. The content of that interview was documented in the jurisdiction/disposition report filed with the juvenile court on February 24, 2021. The Department reported that mother informed them that her Indian ancestry had been researched during a previous case in Yuba County regarding two of the minors (hereafter "the Yuba County case") and "they were unable to determine her Native American ancestry, thus, [the] ICWA was found not to apply."[2] The jurisdiction/disposition report further noted that the investigator had reviewed the prior dependency filings in the Yuba County case and discovered mother had previously identified the Blackfeet, Cherokee, and Choctaw tribes, but denied that she herself, or her parents were enrolled members.

On February 16, 2021, father was interviewed by the same investigator. Father reported having some knowledge that his great-grandfather was a "full blooded Indian," but he did not know his great-grandfather's name or with which tribe he was affiliated or where he lived. The jurisdiction/disposition report included information that the disposition report in the Yuba County case noted that father had told a social worker that he possibly had ancestry with Cherokee and Blackfeet tribes, however he denied being an enrolled member. The jurisdiction/disposition report also provided a brief summary, which we shall detail in our discussion of the issues herein, of the information contained in the Yuba County case's disposition report reflecting the inquiry efforts in that case.

---

[2] Although the Yuba County case involved only two of the four minors in this case, all four minors have the same parents.

3

On March 3, 2021, the parents waived their right to a contested hearing and submitted both the issue of jurisdiction and disposition to the court based on reports that had been filed in the case. The juvenile court then made a finding that "[t]here is no evidence that leads the court or anyone to believe that the Indian Child Welfare Act would apply in this case or that these children have any Native American heritage that would qualify them to be tribal members, and therefore the court finds ICWA does not apply." The court then ordered that the parents be bypassed for reunification services pursuant to section 361.5, subdivision (b)(5), (6) and (13) and set the matter for a hearing to select a permanent plan.

The Department filed a 366.26 report on June 1, 2021. The report contained a section entitled "Indian Child Welfare Act Status." The information contained in this section was the same information that the Department had included in their jurisdiction/disposition report, as well as information from the Cherokee Nation of Oklahoma, the Blackfeet Tribe, and the Jena Band of Choctaw Indians, all from the Yuba County case in 2017 and 2018, that indicated that neither parent nor the children were enrolled members, nor were they eligible for enrollment in the respective tribes. The report also included the following paragraph: "No further information has been provided to this worker regarding the mother and father's knowledge of ICWA since the previous order in Yuba County was made. Thus, there is no reason to believe or know that the children may be Indian children and it is respectfully recommended that the ICWA be found not to apply in the matter of [the minors]."

On July 13, 2021, the court held a hearing to identify a permanent plan for the minors pursuant to section 366.26. At the hearing, the court terminated the parental rights of both parents and identified adoption as the permanent plan for all minors.

Other than their review of the Yuba County reports, the record does not provide that the Department made any additional ICWA inquiry efforts.

4

On July 21, 2021, after the court's order terminating parental rights, the juvenile court received a request for disclosure of the juvenile case file records in this case pursuant to section 827. The request had been filed by the Placer County District Attorney's Office, which had filed a criminal case against mother and father. The juvenile court filed a written order after hearing regarding the section 827 request. In the order after hearing, the juvenile court indicated that it had reviewed the documents requested to be released and listed the various documents. Among the documents that the juvenile court indicated it had reviewed, were Yuba County Juvenile Court reports filed August 16, 2017, September 11, 2017, November 15, 2017, April 27, 2018, and September 28, 2018.

Mother timely appealed.

While this appeal was pending, the Department filed a motion to augment the record on appeal. The motion was granted on December 16, 2021, prior to the filing of appellant's reply brief. The records that were filed with the motion to augment included the Yuba County Health and Human Services Department reports from the previous (2017) dependency case involving the parents and minors A.E. and C.E., which the juvenile court had indicated reviewing pursuant to the section 827 request.

## DISCUSSION

The Department contends that their initial inquiry of the parents was satisfactory and that there was no "reason to believe," and thus no duty of further inquiry, while at the same time arguing that they did further inquire by reviewing the Yuba County reports, and such further inquiry was sufficient for the court to determine that the ICWA did not apply. We do not agree with the Department on either front.

5

# I
## *The Department had a Duty of Further Inquiry Regarding Possible Indian Status of the Minors*

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; see *In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8; *In re W.B.* (2012) 55 Cal.4th 30, 47.)  For purposes of ICWA, an ' "Indian child" ' is a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4); see Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

"As the Supreme Court recently explained, notice to Indian tribes is central to effectuating ICWA's purpose, enabling a tribe to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the matter.  (*In re Isaiah W., supra*, 1 Cal.5th at pp. 8-9.)  Notice to the parent or Indian custodian and the Indian child's tribe is required by ICWA in state court proceedings seeking foster care placement or termination of parental rights 'where the court knows or has reason to know that an Indian child is involved.'  (25 U.S.C. § 1912(a).)  Similarly, California law requires notice to the parent, legal guardian or Indian custodian and the Indian child's tribe in accordance with section 224.2, subdivision (a)(5), if the Department or court 'knows or has reason to know that an Indian child is involved' in the proceedings.  (§ 224.3, subd. (d); see Cal. Rules of Court, rule 5.481(b)(1) [notice is required '[i]f it is known or there is reason to know that an Indian child is involved in a proceeding listed in rule 5.480,' which includes all

dependency cases filed under § 300].)" (*In re Michael V.* (2016) 3 Cal.App.5th 225, 231-232, fn. omitted.)[3]

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.,* subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

We find that the parents' preliminary responses at the initial detention hearing in this case "provided reason to believe Indian children might be involved in these dependency proceedings and triggered the Department's duty to make further inquiry, as mandated by section 224.2, subdivision (e), and [California Rules of Court,] rule 5.481(a)(4)." (*In re T.G.* (2020) 58 Cal.App.5th 275, 292; *id.* at pp. 292-294.) Indeed, the juvenile court articulated that there was a reason to believe that the ICWA may apply and directed the Department to further inquire.

The record is devoid of any evidence that the Department followed up on the information provided by mother. Not only did mother provide the names of her relatives who might have ICWA information at the detention hearing, on January 29, 2021, mother also provided the names and contact information for two paternal aunts for possible placement of the minors. Both paternal aunts share father's surname. The Department reported in its jurisdiction/disposition report that it had made contact with one of the

---

**3** We do not find, nor do the parties contend, that the Department had *reason to know* that the minors were Indian children.

paternal aunts and discussed possible placement of the minors with her.  Significantly, the Department did not report ever having inquired of this aunt about possible Native American ancestry on father's side of the family.

"Accordingly, just as proper notice to Indian tribes is central to effectuating ICWA's purpose, an adequate investigation of a family member's belief a child may have Indian ancestry is essential to ensuring a tribe entitled to ICWA notice will receive it. (See *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 787.)"  (*In re T.G., supra*, 58 Cal.App.5th at p. 289.)

The court in *In re Michael V.*, addressed a similar circumstance wherein the Department failed to interview relatives who potentially had information on the children's Native American ancestry.  "The Department, as well as the court, has an affirmative obligation 'to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members' (§ 224.3, subd. (c); see Cal. Rules of Court, rule 5.481(a)(4)(A)) if a person having an interest in the child 'provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe" (§ 224.3, subd. (b)(1); see Cal. Rules of Court, rule 5.481(a)(5)(A)).' (*In re Michael V., supra*, 3 Cal.App.5th at p. 235.)

The parents did that here.  Mother identified relatives who might have relevant ICWA information, the Department itself received subsequent information about father's relatives, yet none of the Department's reports subsequent to the detention hearing, contain any information about the Department contacting or attempting to contact the relatives that mother identified, or conducting any further inquiry into father's Indian ancestry.  Indeed, other than a review of records in the prior dependency case, the record beyond the detention hearing is silent as to any further ICWA inquiry.

The juvenile court has a continuing duty to inquire whether the children were Indian children in all dependency proceedings. "The continuing nature of a juvenile court's duty to inquire into a child's Indian status appears on the face of section 224.3[subdivision] (a). As noted, that provision reads: 'The court . . . ha[s] an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been . . . filed is or may be an Indian child in all dependency proceedings and in any juvenile wardship proceedings if the child is at risk of entering foster care or is in foster care.' (§ 224.3[, subd.] (a).)" (*In re Isaiah W., supra*, 1 Cal.5th at pp. 10-11.) The juvenile court failed to do so here.

The Department relies on *In re Austin J.* (2020) 47 Cal.App.5th 870 (*Austin J.*), in arguing that mother's identification of relatives who may have information about Native American ancestry suggests a mere possibility of Indian ancestry that is insufficient to trigger further inquiry.

In *Austin J.*, the children's mother told the juvenile court that she may have Cherokee ancestry and indicated that her family may have more information. The juvenile court ordered the Los Angeles County Department of Children and Family Services (DCFS) to investigate the mother's possible ICWA connection and to notify the appropriate Cherokee tribe and appropriate federal agencies. DCFS spoke with a maternal aunt who reiterated that the maternal grandmother may have had Cherokee heritage and the maternal grandfather possibly had Indian heritage, but she was not aware of which tribes. DCFS conducted no further inquiry and no notices were sent out. (*Austin J., supra*, 47 Cal.App.5th at p. 878.)

"Explaining that '[i]nformation about a tribal connection that "is too vague, attenuated and speculative" will not support a "reason to believe the children might be Indian children," ' the *Austin J.* court held the mother's statement she may have Indian ancestry and had been told her mother had Cherokee ancestry and similar statements by the great-aunt did not establish a reason to believe the children were Indian children as

9

defined in ICWA. (*Austin J., supra*, 47 Cal.App.5th at p. 888.) 'At most, they suggest a mere possibility of Indian ancestry. Indian ancestry, heritage, or blood quantum, however, is not the test; being an Indian child requires that the child be either a member of a tribe or a biological child of a member. [Citations.] . . . Indian ancestry, without more, does not provide a reason to believe that a child is a member of a tribe or is the biological child of a member. Here, there is nothing more . . . .' (*Id.* at pp. 888-889.) Even if a claim of Indian ancestry suggested the possibility of Indian tribal membership, the *Austin J.* court continued, 'that bare suggestion is insufficient by itself to establish a reason to believe a child is an Indian child.' (*Id.* at p. 889.)" (*In re T.G., supra*, 58 Cal.App.5th pp. 293-294.)

As other courts have done, we decline to follow the ruling in *Austin J.* and find the analysis in *In re T.G.*, from which we quote, to be more persuasive. Specifically, we decline to follow "*Austin J.*'s narrow reading of the nature and quality of information sufficient to trigger the duty of further inquiry. In particular, [*Austin J.*'s] insistence a parent's express statement of Indian ancestry does not constitute a reason to believe an Indian child may be involved is fundamentally at odds with well-established ICWA law. To be sure, an 'Indian child' is defined in terms of tribal membership, not ancestry. But the question of membership is determined by the tribes, not the courts or child protective agencies. (See *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 65-66, fn. 21 [Indian tribe is final arbiter of its membership rights]; § 224.2, subd. (h) ['A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe . . . shall be conclusive. Information that the child is not enrolled, or is not eligible for enrollment in, the tribe is not determinative of the child's membership status unless the tribe also confirms in writing that enrollment is a prerequisite for membership under tribal law or custom'].) That determination often requires providing a tribe with extensive biographical data (that is, information about ancestors and ancestry), which is why section 224.3, subdivision (a)(5)(C), prescribes in detail the information about

10

parents, grandparents and great-grandparents that must be included in an ICWA notice." (*In re T.G., supra*, 58 Cal.App.5th at p. 294, fn. omitted.)

But parents may not always have that extensive biographical data, or even substantial information about their Indian ancestry. "General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved. (Cf. *In re A.M.* [(2020)] 47 Cal.App.5th [303,] 322.) Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and child protective agency's 'affirmative and continuing duty to inquire' to construe broadly the duty to make further inquiry. (§ 224.2, subd. (a).)" (*In re T.G., supra*, 58 Cal.App.5th at p. 295.)

Further, as noted in *In re S.R.* (2021) 64 Cal.App.5th 303, 317, the "recent amendment to section 224.2, subdivision (e) confirms the 'reason to believe' standard requiring further inquiry should be broadly interpreted. . . . [T]he Legislature amended the statute to specify '[t]here is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information *suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe*.' (§ 224.2. subd. (e)(1), italics added.) Those plain terms suggest a loose fit between the information that requires further inquiry and the specific kinds of information that constitute 'reason to know' a child in dependency proceedings is an Indian child as defined by statute. . . . [Citation.] That new provision forecloses the narrow interpretation of what constitutes reason to believe advanced by the court in *Austin J.*"

Finally, we find the holding advanced in *Austin J.* is also inconsistent with section 224.2, subdivision (b), which requires the child protective agency to ask, as part of its initial duty of inquiry, extended family members whether the child is or may be an Indian child. (See § 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(1); see also *In re Y.W.* (2021) 70 Cal.App.5th 542, 554.)

11

## II
### *The Information Provided to the Juvenile Court from the Yuba County Case was Insufficient to Satisfy the ICWA's Inquiry Obligations*

The Department next contends that it did conduct further inquiry by reviewing the 2017 reports in the Yuba County case and providing information from their review to the juvenile court in this case. However, we find that the information the Department provided to the juvenile court in this case was insufficient for the juvenile court to make a finding, some three to four years later, that the Department had met its ICWA inquiry obligations.

In the jurisdiction/disposition report in this case, the Department noted that it had interviewed mother on January 29, 2021, and she reported having some "American Indian" ancestry, and that such ancestry had been previously researched during the Yuba County case regarding two of the minors, and "they [Yuba County] were unable to determine her Native American ancestry, thus, ICWA was found not to apply." Father continued to report that his great-grandfather was "full blooded Indian." The Department also noted it had reviewed the Yuba County case file and discovered therein that mother had previously identified the Blackfeet, Cherokee, and Choctaw tribes, and father had identified the Cherokee and Blackfeet tribes, although both parents denied being enrolled members of any of the tribes. The Department further reported that an investigator from Yuba County had been told by the parents of their claimed tribal affiliations in connection with the Yuba County case. The Yuba County investigator had received response letters from all but the Blackfeet Tribe, Cherokee Nation of Oklahoma, and Jena Band of Choctaw Indians, each stating that two of the minors in this case were not Indian children, and 60 days had elapsed from the time the original notice was sent to the three outstanding tribes. The Department noted that the Yuba County Juvenile Court had found the ICWA did not apply to the two minors, it further contended that it had not received any further information since the Yuba County case, and, on that basis,

12

recommended the juvenile court here find the ICWA does not apply to any of the four minors in this case.

Notably, the Department did not represent whether it, or the Yuba County case investigator, interviewed the relatives that mother identified at the detention hearing. It did not represent that, as directed by the juvenile court, it had followed up on whether there were any individuals who might have information about father's Cherokee and Blackfeet heritage, even though it had since learned of two living paternal aunts, one with whom it had been in contact. Nor did the Department provide any information regarding what investigation the Yuba County investigator undertook, what information the investigator sent to the tribes, or when that information was sent. The limited information it did provide to the juvenile court was insufficient for the juvenile court to find the Department had fulfilled its ICWA inquiry obligation.

### III

*The Department's Failure to Meet its ICWA Inquiry Obligation was Not Harmless Error*

The Department asserts that any failure to provide sufficient information from the Yuba County case to the juvenile court is harmless error, since the Yuba County case records, reviewed by the juvenile court after parental rights had been terminated, demonstrate there was sufficient ICWA inquiry already made in that case. However, a closer look at the Yuba County case file reveals the same deficiencies in the record that were before the juvenile court when it determined that the ICWA did not apply.

For example, mother identified three relatives by name at the detention hearing in this case who may have had further information regarding the minors' Native American heritage—two aunts and one uncle. The Yuba County case records reflect that the investigator in that case spoke with an unnamed maternal aunt and uncle, not *two* aunts.

The Yuba County case file also reflects that, at the time it sent out notices to the Choctaw, Cherokee and Blackfeet tribes, it had not yet interviewed father and discovered he also claimed Cherokee and Blackfeet heritage, nor does it reflect the investigator ever

13

interviewed any of father's relatives. The file further reflects that all of the letters it received from the tribes stating the minors were not Indian children were dated prior to the investigator's interview of father. And while the investigator renoticed three tribes (the Blackfeet Tribe, Cherokee Nation and Jena Band of Choctaw Indians) after its October 3, 2017 interview of father, the file does not reflect that those three notices contained father's information or claim of Indian heritage, or included the names of father's biological parents, which had since been provided, nor were the notices resent to two of the federally recognized Cherokee tribes who had already responded based on mother's claim of Cherokee heritage.

Perhaps more concerning, however, is that none of this critical information was provided to the juvenile court in this case prior to it making an ICWA finding.

In sum, we need not, and do not, decide here whether or when it is appropriate for the juvenile court to rely on another county's finding in a previous case that the ICWA does not apply. Here, the juvenile court did not take judicial notice of the Yuba County case records or of the Yuba County Juvenile Court's ICWA finding, or otherwise indicate it was basing its finding on the Yuba County court's previous ICWA finding. It did not review the Yuba County case record prior to determining that the ICWA did not apply, nor was it provided with an accurate and full summary thereof. The juvenile court found reason to believe the minors were Indian children and directed the Department to investigate further. The Department's investigation was incomplete, as was its report to the juvenile court, resulting in the juvenile court's finding that the ICWA does not apply here to be unsupported by substantial evidence.

Having reviewed the Yuba County case file upon which the Department relied, we cannot find the error in failing to conduct a more thorough ICWA inquiry harmless. (*In re Brandon T.* (2008) 164 Cal.App.4th 1400, 1415 [errors in ICWA notice subject to harmless error analysis].)

14

We find the Department failed to adequately investigate the parents' claim of Indian ancestry and the juvenile court failed to ensure an appropriate inquiry had been conducted before concluding the ICWA did not apply to these proceedings. (See *In re T.G., supra*, 58 Cal.App.5th at p. 280.)

We must therefore remand for limited ICWA proceedings.

## DISPOSITION

The orders terminating parental rights are conditionally affirmed. The matter is remanded to the juvenile court for compliance with the inquiry and notice provisions of the ICWA and related California law as set forth above and for further proceedings consistent with this opinion. If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing. (25 U.S.C. § 1914; § 224, subd. (e).)

/s/
EARL, J.

We concur:

/s/
BLEASE, Acting P. J.

/s/
ROBIE, J.

15